UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA, *ex rel*.
QUINTIN J. SCHWARTZ, SR.,

                    Plaintiff,

              v.

DOCUMENT REPROCESSORS OF
NEW YORK, INC., ERIC LUNDQUIST, and
MURIEL LUNDQUIST,

                    Defendants.
_____

**DECISION AND ORDER**

20-cv-6167 EAW

## <u>INTRODUCTION</u>

Plaintiff-Relator Quintin J. Schwartz, Sr. ("Relator") alleges a claim under the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729-3732 (the "FCA").  (Dkt. 34). In the amended complaint, which is the operative pleading, Relator asserts that defendants Document Reprocessors of New York, Inc. ("DRNY"), Eric Lundquist, and Muriel Lundquist (collectively "Defendants") made false representations and certifications under the Davis-Bacon Act, 40 U.S.C. § 3141, and other prevailing wage and benefit requirements applicable to "Defendants' General Service Administration ('GSA') Federal

Supply Schedule contract (GS-10F00126X)[.]" (*Id.* at ¶ 2).  Relator further claims that he was fired in retaliation for his efforts to stop this wrongdoing. (*Id.* at ¶¶ 56-58).[1]

Defendants have moved to dismiss the amended complaint for failure to comply with Federal Rule of Civil Procedure 9(b). (Dkt. 41).  For the reasons that follow, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

### I.   Factual Background

The following facts are taken from the amended complaint.  As is required at this stage of the proceedings, the Court treats Relator's factual allegations as true.

DRNY is a New York corporation with its principal place of business in Penn Yan, New York.  (Dkt. 34 at ¶ 12).  It is hired by "corporations, businesses and governmental entities to recover and restore books, documents and other media that had been damaged by fire or flooding, often in connection with some unanticipated disaster such as hurricanes or other extreme weather."  (*Id.* at ¶ 18).  Mr. Lundquist is DRNY's Chief Executive Officer, while Ms. Lundquist is Vice-President and Secretary.  (*Id.* at ¶¶ 13-14).  Mr. and Ms. Lundquist are each a 50% owner of DRNY.  (*Id.*).

Relator was employed by DRNY for more than 28 years.  (*Id.* at ¶ 11).  He eventually became General Manager.  (*Id.* at ¶ 17).  In that role, Relator "made all the arrangements and preparations for locating, removing and restoring the relevant materials,

---

[1]     Although Relator does not make this distinction in his amended complaint, the Court notes that claims of retaliation under the FCA are individual claims and are distinct from *qui tam* claims brought on behalf of the United States.  *See United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc*., 865 F.3d 71, 75 (2d Cir. 2017).

organized and supervised the required personnel and personally participated in the project from beginning to end, on site and otherwise." (*Id*. at ¶ 22). Relator's responsibilities were "primarily focused on operations." (*Id*. at ¶ 25). "Administrative tasks, such as payroll, were delegated primarily to the 'office manager.'" (*Id*.).

In roughly 2008, Defendants became interested in obtaining a contract with GSA. (*Id*. at ¶ 26). A now-deceased DRNY employee named Duncan Rioche took the lead in pursuing a GSA contract. (*Id*.). His efforts succeeded in February of 2011. (*Id*.). "[P]otential customers . . . will generally assign greater credibility" to GSA-approved contractors, and GSA-approved contractors "will generally prominently display this qualification in their advertising and promotional materials." (*Id*. at ¶ 27). GSA-approved contractors are required to pay employees "prevailing rates" of wages and benefits. (*Id*. at ¶ 29); *see also* 40 U.S.C. § 3145(a).

DRNY had a successful year in 2012, "largely owing to the Hurricane Sandy disaster that struck Jersey City, NJ particularly hard, causing major flooding of government offices." (Dkt. 34 at ¶ 32). DRNY entered into a contract with Jersey City worth roughly $8-10 million (the "Jersey City contract"). (*Id*. at ¶ 33).

The Jersey City contract was suspended in 2015 before all of the contracted work was completed. (*Id*. at ¶ 34). In October of 2017, Jersey City issued a request for proposal to complete the remainder of the work. (*Id*.). DRNY was the successful bidder and was awarded a renewed contract (the "renewed Jersey City contract"). (*Id*. at ¶ 35). The renewed Jersey City contract "involved [Federal Emergency Management Agency ('FEMA')] funds and was thus subject to the GSA prevailing wage requirements." (*Id*.).

In August of 2018, Mr. Lundquist began taking the position that the renewed Jersey City contract was "not subject to GSA prevailing wage requirements[.]"  (*Id*. at ¶ 36).  Mr. Rioche, who at the time was suffering from a terminal illness, believed that the prevailing wage requirements did apply to the renewed Jersey City contract.  (*Id*. at ¶ 37).

As Mr. Rioche became increasingly unable to work, Relator took on additional responsibility for "the tasks associated with ensuring GSA compliance[.]"  (*Id*. at ¶ 38).  Mr. Rioche had applied to GSA for a "mass modification" in early 2019, but the request was denied "primarily because the application could not establish compliance with prevailing wage and benefit requirements."  (*Id*.).  Relator was "working to fix this problem" in July of 2019, and contacted Belinda Wilcox, DRNY's office manager, "seeking assurance that DRNY was in compliance with prevailing wage and benefit rates as required by the GSA[.]"  (*Id*. at ¶¶ 38-39).  Ms. Wilcox did not provide the requested assurance.  (*Id*. at ¶ 40).

In November of 2019, Ms. Wilcox sent an email to Mr. Lundquist in which she "provided . . . specific details establishing that GSA prevailing wage requirements were not being met."  (*Id*. at ¶¶ 40-41).  Mr. Lundquist continued to take the position that "GSA requirements applied only to contracts directly with the federal government[.]"  (*Id*. at ¶¶ 43-44).  Relator "continued to protest and encourage Defendants to bring DRNY into compliance."  (*Id*. at ¶ 46).  Relator also refused to sign submissions to the GSA certifying that DRNY was complying with its obligations.  (*Id*.).  Relator's employment was terminated on February 19, 2020.  (*Id*. at ¶ 50).

## II.   **Factual Background**

Relator commenced this action on March 20, 2020.  (Dkt. 1).  Only DRNY was named as a defendant in the original complaint.  (*Id*.).  Pursuant to 31 U.S.C. § 3730(b)(2), the matter was automatically sealed.

On August 10, 2021, the United States advised the Court pursuant to 31 U.S.C. § 3730(b)(4)(B) that it declined to intervene in the matter.  (Dkt. 12).  On August 17, 2021, the Court entered an Order unsealing the complaint and directing that it be served by Relator.  (Dkt. 13).

DRNY moved to dismiss the original complaint on May 23, 2022.  (Dkt. 26).  Upon consent of all parties, the Court entered an Order on July 26, 2022, granting DRNY's motion to dismiss without prejudice and authorizing Relator to file an amended complaint. (Dkt. 33).  Relator filed the amended complaint on August 24, 2022, adding the Lundquists as defendants.  (Dkt. 34).  The amended complaint contains two causes of action: (1) "FRAUDULENT CLAIMS AND RECORDS IN VIOLATION OF 31 U.S.C. §3729(A)(1)(A) AND (B)" and (2) "RETALIATION [31 U.S.C. §3730(H)]."  (Dkt. 34 at 10-11 (brackets in original)).

Defendants moved to dismiss the amended complaint on November 28, 2022.  (Dkt. 41).  Relator filed a response on January 6, 2023 (Dkt. 45), and Defendants filed a reply on January 27, 2023 (Dkt. 48).

**DISCUSSION**

## I.   **Standard of Review**

"The FCA is an anti-fraud statute that may be enforced not just through litigation brought by the Government itself, but also through civil *qui tam* actions that are filed by private parties, called relators, in the name of the Government." *United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc*., 865 F.3d 71, 81 (2d Cir. 2017) (quotations omitted). Under the FCA, any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" may be held liable. 31 U.S.C. § 3729(a)(1)(A), (B). "The FCA defines a 'claim' as 'any request or demand . . . for money or property' that is presented, directly or indirectly, to the United States." *Chorches*, 865 F.3d. at 81 (quoting 31 U.S.C. § 3729(b)(2)(A)).

Federal Rule of Civil Procedure 9(b) provides: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "The Rule 9(b) principles apply to complaints filed under the False Claims Act[.]" *United States ex rel. Ladas v. Exelis, Inc*., 824 F.3d 16, 26 (2d Cir. 2016); *see also Chorches*, 865 F.3d at 81 ("*Qui tam* complaints filed under the FCA, because they are claims of fraud, are subject to Rule 9(b)."). To satisfy Rule 9(b), a complaint alleging fraud generally must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Ladas*, 824 F.3d at 25 (internal quotation marks omitted).

As a threshold matter, Relator argues that he was not required to state his claims with particularity, relying on *Bishop v. Wells Fargo & Co*., 870 F.3d 104 (2d Cir. 2017). (*See* Dkt. 45 at 6-7).  Relator misunderstands the holding in *Bishop*.  In *Bishop*, the Second Circuit concluded that an earlier decision, *Mikes v. Straus*, 274 F.3d 687 (2d Cir. 2001), had been abrogated by the Supreme Court's decision in *Universal Health Servs., Inc. v. United States and Massachusetts, ex rel. Julio Escobar and Carmen Correa*, 579 U.S. 176 (2016).  In *Mikes*, the Second Circuit held that a claim is expressly false for purposes of the FCA only if it "falsely certifies compliance with a *particular* statute, regulation or contractual term, where compliance is a prerequisite to payment."  274 F.3d at 698 (emphasis added).  The *Bishop* court termed this holding the "*Mikes* particularity requirement," and concluded that it "did not survive *Escobar*."  870 F.3d at 106.  In other words, *Bishop* addresses the substantive standards for succeeding on an express false certification claim under the FCA; it does not discuss or impact the applicability of Rule 9(b)'s particularity requirement to FCA claims.  Moreover, *Escobar* itself states: "False Claims Act plaintiffs must . . . plead their claims with plausibility and *particularity* under Federal Rules of Civil Procedure 8 and 9(b)[.]"  597 U.S. at 195 n.6 (emphasis added).

Post-*Bishop*, the Second Circuit has continued to apply Rule 9(b) to *qui tam* claims under the FCA, and has continued citing *Chorches* and *Ladas*.  *See, e.g., United States v. Strock,* 982 F.3d 51, 59 (2d Cir. 2020); *Judd Burstein, P.C. v. Long*, 797 F. App'x 585, 588 (2d Cir. 2019); *United States ex rel. Gelbman v. City of New York*, 790 F. App'x 244, 247 (2d Cir. 2019); *United States ex rel. Pelullo v. Am. Int'l Grp., Inc*., 757 F. App'x 15, 17

(2d Cir. 2018).  The Court accordingly applies the Rule 9(b) pleading standard to Relator's first cause of action, alleging fraud under the FCA.

Relator's second cause of action asserts a retaliation claim under the FCA.  "A plaintiff need not plead an FCA retaliation claim with particularity because no showing of fraud is required."  *United States v. N. Adult Daily Health Care Ctr.*, 205 F. Supp. 3d 276, 297 (E.D.N.Y. 2016); *see also Chorches*, 865 F.3d at 95 ("The particularity requirement of Rule 9(b) does not apply to retaliation claims under the FCA.").  Instead, such claims are reviewed under the plausibility standard of Rule 12(b)(6).  Pursuant to that standard, a court must consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## II.    Relator's Claims

The amended complaint contains two causes of action: (1) "FRAUDULENT CLAIMS AND RECORDS IN VIOLATION OF 31 U.S.C. §3729(A)(1)(A) AND (B)" and (2) "RETALIATION [31 U.S.C. §3730(H)]."  (Dkt. 34 at 10-11 (brackets in original)).  Defendants seek dismissal of Relator's claims, arguing that he has not identified any alleged false claims presented or caused to be presented to the government for payment by

DRNY and that his allegations are insufficient to pierce the corporate veil and state claims against the Lundquists as individuals.  Defendants make no substantive argument regarding the retaliation claim.

Relator argues in opposition that he has alleged that: "a) DRNY obtained and advertised itself as having obtained GSA certification whereupon prevailing wage requirements applied; b) DRNY was awarded an approximately $8- $10 million contract disaster relief contract with Jersey City funded by FEMA that required prevailing wages be paid to employees; and c) DRNY was not in compliance with prevailing wage requirements with respect to many employees."   (Dkt. 45 at 8-9 (internal citations omitted)).  Relator further argues:

> If Defendants' position is that these allegations do not set forth that any false claims were actually submitted – that is, that the Defendants never certified their payrolls for the Jersey City contract, never submitted requests for payment and never actually received payment on that contract – then in the face of what is already alleged (and even documented) they should be made to say so in a responsive pleading.  Moreover, the FCA applies not only to false claims actually submitted, but to a conspiracy to submit them.

(*Id*. at 9).  Finally, Relator argues that the amended complaint does not attempt to pierce the corporate veil with respect to the Lundquists, but instead "alleges a conspiracy to violate the FCA which seems to include the two principals of DRNY."  (*Id*.).

### A.   FCA Fraud Claim

"Fraud under the FCA has two components: the defendant must submit or cause the submission of a claim for payment to the government, and the claim for payment must itself be false or fraudulent."  *Chorches*, 865 F.3d at 83 (alteration and citation omitted).  "A successful FCA claim generally occurs in one of three forms: (1) a factually false claim;

(2) a legally false claim under an express false certification theory; and (3) a legally false claim under an implied certification theory." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 104 n.7 (2d Cir. 2021) (quotation omitted), *cert. denied*, 142 S. Ct. 2679 (2022).  In this case, Relator purports to state an "express false certification claim."  (Dkt. 45 at 7).[2]  "An express false certification occurs when a claimant explicitly represents that he or she has complied with a contractual condition, but in fact has not complied." *Foreman*, 19 F.4th at 104 n.7 (citation omitted).

"[A] misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act."  *Id*. at 192.   "The materiality standard is demanding.  The False Claims Act is not an all-purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Id*. at 194 (citation and quotation omitted).

"[A] complaint can satisfy Rule 9(b)'s particularity requirement by making plausible allegations creating a strong inference that specific false claims were submitted to the government and that the information that would permit further identification of those claims is peculiarly within the opposing party's knowledge."  *Chorches*, 865 F.3d at 83. The issue before the Court is thus whether the factual allegations in the amended complaint

---

[2]    By contrast, an implied false certification claim "arises where the defendant submits a claim for payment, impliedly certifying compliance with conditions of payment while omitting its violations of statutory, regulatory, or contractual requirements, and these omissions render the representations misleading." *Foreman*, 19 F.4th at 104 n.7.  Relator does not purport to assert an implied false certification claim.  (*See* Dkt. 45 at 7 ("The case at bar is an express false certification claim[.]" (internal quotation marks omitted)).

create a strong inference that Defendants submitted claims to the government containing material misrepresentations.  They do not.

The Court will assume for purposes of its analysis that the submission of a request for payment to Jersey City in connection with either the Jersey City contract or the renewed Jersey City contract constituted a "claim" for FCA purposes because Jersey City had received funds from FEMA.  *See Escobar*, 579 U.S. at 182 (explaining that a claim under the FCA "includes direct requests to the Government for payment as well as reimbursement requests made to the recipients of federal funds under federal benefits programs").  The Court will further assume that DRNY made such requests; this is a reasonable inference based on the fact that DRNY is alleged to have performed work under the relevant contracts for several years.

Even making these assumptions in Relator's favor, the amended complaint is devoid of any facts plausibly—much less strongly—supporting the inference that DRNY's requests for payment contained material misrepresentations.  Relator has alleged nothing regarding the form of such requests, and in particular about what information they would have contained.  The amended complaint does not address what Jersey City—the entity allegedly receiving the requests for payment—knew or understood about the wages being paid to DRNY's employees, nor does it allege any facts supporting the inference that payment requests submitted to Jersey City would have contained any kind of express certification regarding the payment of prevailing rates of wages and benefits.

Relator's theory appears to be that DRNY having held itself out as a GSA-approved contractor is the requisite false representation.  However, Relator does not allege that this

statement was false.  To the contrary, Relator acknowledges in the amended complaint that DRNY obtained a GSA contract in February of 2011.  (Dkt. 34 at ¶ 26).

Moreover, the amended complaint does not contain any allegations supporting the inference that compliance with prevailing wage requirements was material to Jersey City's payment decision.  Factors relevant to assessing materiality include "whether the government expressly identified a provision as a condition of payment," "the government's response to noncompliance with the relevant contractual, statutory, or regulatory provision," and "whether the defendants' alleged noncompliance was substantial."  *Strock*, 982 F.3d at 62-65.  The amended complaint lacks any information regarding whether Jersey City required compliance with prevailing wage requirements as a condition of payment or what its reaction was to failure to comply with such requirements.  These factors thus do not support a finding of materiality.

As to the final factor, Relator has attached to the amended complaint a spreadsheet purporting to show the shortfall in wages and benefits that DRNY was paying certain of its employees.  (Dkt. 34-3).  However, the amended complaint states that this spreadsheet is only a "small sample of the wages and benefits DRNY was actually paying as compared with the prevailing wages[.]"  (Dkt. 34 at ¶ 37).  The amended complaint again lacks information from which any inferences can be drawn regarding the extent of DRNY's alleged failure to comply with prevailing wage requirements.

The Court's analysis of the FCA fraud claim is not changed by Relator's belated attempt to cast it as one for conspiracy to violate the FCA.  The amended complaint explicitly states that Relator is asserting a violation of "31 U.S.C. § 3729(a)(1)(A) and (B)."

(Dkt. 34 at 10).  It is 31 U.S.C. § 3729(a)(1)(C) that establishes liability for conspiracy to violate the FCA, and that statutory provision is cited nowhere in the amended complaint, nor does the amended complaint ever discuss any alleged conspiracy.  It is well-established that new claims may not be raised in opposition to a motion to dismiss.  *See, e.g., Mathie v. Goord*, 267 F. App'x 13, 14 (2d Cir. 2008); *Louis v. New York City Hous. Auth.*, 152 F. Supp. 3d 143, 158 (S.D.N.Y. 2016).[3]

In sum, Relator has not made "plausible allegations creating a strong inference that specific false claims were submitted to the government[.]"  *Chorches*, 865 F.3d at 83.  His *qui tam* FCA fraud claim must be dismissed for failure to satisfy Rule 9(b).

## B.    FCA Retaliation Claim

Relator also asserts an individual claim for retaliation under the FCA, based on the termination of his employment.  "To sustain an action for retaliatory discharge under the FCA, a plaintiff must establish: (1) that [he] engaged in conduct protected under the statute; (2) that the defendants were aware of [his] conduct; and (3) that [he] was terminated in retaliation for that conduct."  *N. Adult Daily*, 205 F. Supp. 3d at 297 (original alteration and quotation omitted)).  Protected conduct consists of "lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of" the FCA.  31 U.S.C. § 3730(h)(1).  A party need

---

[3]    The Court also notes that Relator's cursory attempt to assert a conspiracy between a corporation and its owners/corporate officers  runs afoul of the intra-corporate conspiracy doctrine.  *See United States ex rel. Ross v. Indep. Health Corp.*, No. 12-CV-299S, 2023 WL 24055, at *12 (W.D.N.Y. Jan. 3, 2023) (dismissing conspiracy claim under the FCA because there was an intra-corporate relationship between the defendants).

not succeed on the underlying FCA claim to successfully show retaliation, but "he must demonstrate that he had been investigating matters that were calculated, or reasonably could have led, to a viable FCA action." *N. Adult Daily*, 205 F. Supp. 3d at 298 (original alteration and quotation omitted).

Defendants' motion to dismiss notes in passing that Relator has asserted a retaliation claim (Dkt. 41-1 at 6), but makes no substantive arguments regarding its viability. Defendants also do not acknowledge that retaliation claims under the FCA need not be pleaded with particularity in accordance with Rule 9(b). Defendants have accordingly not satisfied their burden of demonstrating that Relator's retaliation claim should be dismissed, and their motion is denied to the extent it seeks such relief.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the amended complaint (Dkt. 41) is granted in part and dismissed in part. Specifically, the motion is granted with respect to the first cause of action (fraud in violation of the FCA) and denied with respect to the second cause of action (retaliation under the FCA).

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      September 19, 2023
            Rochester, New York

- 14 -