UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA, *ex rel*.
QUINTIN J. SCHWARTZ, SR.,

         Plaintiff,

      v.

DOCUMENT REPROCESSORS OF
NEW YORK, INC., ERIC LUNDQUIST, and
MURIEL LUNDQUIST,

         Defendants.

_____

**DECISION AND ORDER**

6:20-CV-6167 EAW

**INTRODUCTION**

Plaintiff-Relator Quintin J. Schwartz, Sr. ("Plaintiff" or "Relator") brings a claim for retaliation under the False Claims Act, 31 U.S.C. § 3730(h), against defendants Document Reprocessors of New York, Inc. ("DRNY"), Eric Lundquist, and Muriel Lundquist (collectively "Defendants"). (Dkt. 34). Plaintiff alleges that Defendants terminated his employment following his attempt to bring DRNY into compliance with its General Services Administration ("GSA") obligations and because he refused to participate in the alleged falsification of records and reports. (*Id*. at ¶¶ 56-58). Presently before the Court are the parties' cross-motions for partial summary judgment. (Dkt. 73; Dkt. 74). For the following reasons, Defendants' motion (Dkt. 73) is granted, and Plaintiff's motion (Dkt. 74) is denied.

- 1 -

## FACTUAL BACKGROUND

The Court notes at the outset that neither party has filed a statement of undisputed facts, as required by Rule 56(a)(1) of this Court's Local Rules of Civil Procedure. *See* L. R. Civ. P. 56(a)(1) (requiring that the moving party submit "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," and noting that "[f]ailure to submit a statement in compliance with this Rule may constitute grounds for denial of the motion."). The Court will discuss the implications of this failure below. The following summary is taken from the amended complaint (Dkt. 34), the declaration submitted by Mr. Lundquist in opposition to Plaintiff's motion for partial summary judgment (Dkt. 76-1), and the exhibits attached to Plaintiff's motion for partial summary judgment.

DRNY is a New York corporation with its principal place of business in Penn Yan, New York, and it is hired by "corporations, businesses and governmental entities to recover and restore books, documents and other media that had been damaged by fire or flooding, often in connection with some unanticipated disaster such as hurricanes or other extreme weather." (*Id*. at ¶¶ 12, 18). Mr. Lundquist is DRNY's Chief Executive Officer, while Ms. Lundquist is Vice President and Secretary. (*Id*. at ¶¶ 13-14). Mr. and Ms. Lundquist are each a 50 percent owner of DRNY. (*Id*.). Relator was employed by DRNY for more than 28 years, and he eventually became General Manager. (Dkt. 34 at ¶¶ 11, 17; Dkt. 76-1 at ¶ 4).

According to Defendants, in 2009, DRNY's former and now deceased employee Duncan Ricoh helped DRNY procure a GSA contract, to allow DRNY to bid on federal

projects. (Dkt. 76-1 at ¶ 6). This primarily consisted of the electronic submission of quarterly sales reports, which was required under the GSA contract. (*Id*.). DRNY did not handle many GSA contracts; rather, the benefit came from procuring state and other non-federal contracts, which would often want DRNY to quote the lowest contract pricing offered to the GSA, and this was the case with DRNY's Disaster Recovery Digital Reproductions for Jersey City project (hereinafter, the "Jersey City project."). (*Id*. at ¶ 7). The Jersey City project began on an emergency basis and was billed by DRNY to Jersey City on a time and materials basis from 2011 to 2015. (*Id*. at ¶ 8). The Jersey City agreement did not reference the GSA as to pricing, prevailing hourly wage requirements, or benefits requirements; rather, it was a Jersey City project for flood damages to Jersey City documents. (*Id*. at ¶ 9). In 2017, Jersey City wanted to complete the work suspended in 2015, and DRNY was the successful bidder for a renewed contract. (*See* Dkt. 34 at ¶¶ 34-35).

After Mr. Ricoh passed away in 2018, Plaintiff became DRNY's designated "signor" on the GSA account, and between January and February 2020, Plaintiff sent a series of emails complaining to DRNY that he could not or would not submit anything to GSA, as he believed that DRNY had GSA compliance problems associated with its hourly wage and benefits paid to DRNY workers. (Dkt. 76-1 at ¶ 12). This issue became a point of contention between DRNY and Plaintiff, who was uncomfortable with his role as GSA signatory. (*Id*. at ¶ 13). DRNY retained the services of a consultant, Edward Hitchner, to take over these responsibilities, but Plaintiff refused Mr. Lundquist's request to transfer his role as contract administrator for the GSA contract. (*Id*.). The "net result" was that the

GSA portal was controlled by Plaintiff, who refused to interact with the GSA, and refused to send out Jersey City project invoices on the contract. (*Id*. at ¶ 15).

Defendants contend that Plaintiff resigned from DRNY on February 18, 2020, and that his resignation was verbally accepted by Mr. Lundquist. (*Id*.). Because Plaintiff locked DRNY and Mr. Hitchner out of the GSA system, he was then formally terminated. (*Id*.). Defendants contend that Plaintiff was terminated due to his blatant insubordination, poor management, and prior self-dealing, citing an issue with Plaintiff in 2016, where he misdirected and used DRNY funds and employees to perform renovations on his personal residence. (*Id*. at ¶¶ 4-5, 15).

Plaintiff asserts that he was terminated for engaging in protected activity. Plaintiff submits various exhibits, including three recorded telephone calls between himself and Mr. Lundquist, three emails, including an email from DRNY's attorney which Plaintiff argues supports his position, and a termination letter. (*See* Dkt. 74-1, Dkt. 74-3 through Dkt. 74-6). Plaintiff states that Mr. Lundquist told him that if he would not sign the alleged false certifications, Plaintiff would have to resign. According to Plaintiff, he was terminated following his refusal to sign off on DRNY's alleged false payroll certifications.

## **PROCEDURAL HISTORY**

Relator commenced this action on March 20, 2020. (Dkt. 1). Only DRNY was named as a defendant in the original complaint. (*Id*.). Pursuant to 31 U.S.C. § 3730(b)(2), the matter was automatically sealed.

On August 10, 2021, the United States advised the Court pursuant to 31 U.S.C. § 3730(b)(4)(B) that it declined to intervene in the matter. (Dkt. 12). On August 17, 2021,

the Court entered an Order unsealing the complaint and directing that it be served by Relator. (Dkt. 13).

DRNY moved to dismiss the original complaint on May 23, 2022. (Dkt. 26). Upon consent of all parties, the Court entered an Order on July 26, 2022, granting DRNY's motion to dismiss without prejudice and authorizing Relator to file an amended complaint. (Dkt. 33). Relator filed the amended complaint on August 24, 2022, adding the Lundquists as defendants. (Dkt. 34). The amended complaint included two causes of action: (1) fraud in violation of the FCA, and (2) retaliation in violation of the FCA. (Dkt. 34 at 10-11).

Defendants moved to dismiss the amended complaint on November 28, 2022. (Dkt. 41). On September 19, 2023, the Court granted the motion in part. (Dkt. 49). The Court dismissed Plaintiff's first cause of action for fraud in violation of the FCA, but declined to dismiss Plaintiff's claim for retaliation under the FCA, 31 U.S.C. § 3730(h), including because Defendants made no substantive arguments regarding its viability. (*Id*. at 14). The case was referred to the Hon. Marian W. Payson, United States Magistrate Judge, for supervision of discovery. (Dkt. 55).

On April 22, 2025, the parties filed cross-motions for partial summary judgment. Defendants seek dismissal of the retaliation claim against individual defendants Eric Lundquist and Muriel Lundquist (hereinafter, the "Individual Defendants"), arguing that there can be no individual liability for FCA-based retaliation claims. (Dkt. 73-1 at 3). Plaintiff seeks summary judgment on liability for his retaliation claim, arguing that he has established through documentary and other indisputable proof that Defendants retaliated

against him by terminating his employment. (Dkt. 74-7 at 4). Plaintiff does not seek summary judgment on the issue of damages. (*Id*. at 6).

The parties each filed responses and replies to the cross-motions. (Dkt. 76 (Defendants' response in opposition to Plaintiff's motion for summary judgment); Dkt. 77 (Plaintiff's response in opposition to Defendants' motion for summary judgment); Dkt. 78 (Defendants' reply in further support for their motion for summary judgment); Dkt. 79 (Plaintiff's reply in further support of his motion for summary judgment)).

## **DISCUSSION**

### I.     **Legal Standards**

#### A.     **Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the non-moving party, the Court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "Where, as here, cross motions for summary judgment are filed, [courts] 'evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Walker v. Carrozzo*, 664 F. Supp. 3d 490, 505 (S.D.N.Y. 2023) (quoting *Byrne v. Rutledge*, 623 F.3d 46, 53 (2d Cir. 2010)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concerta Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation modified). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II.    Discussion

### A. Defendants' Motion – Individual Liability Under the FCA (Dkt. 73)

Defendants move for partial summary judgment on the basis that Plaintiff cannot state a viable retaliation claim against the Individual Defendants because there is no

individual liability for FCA-based retaliation claims as a matter of law.  (Dkt. 73-1 at 3).

Defendants cite courts in the Second Circuit that have "repeatedly held" that there is no

individual liability for retaliation claims under the FCA.  (*Id*. at 5-6).

In response, Plaintiff concedes that most courts applying 31 U.S.C. § 3730(h) have

concluded that relief from retaliatory actions is available against an employer, only.  (Dkt.

77 at 1).  However, Plaintiff submits the following: (1) there is no case law on the relevant

question binding on the Court—in other words, the Second Circuit has not squarely

addressed this issue; (2) ordinary and well-settled principles of statutory interpretation and

construction undermine the current majority view because a 2009 amendment to the FCA

eliminated the word "employer" from § 3730(h); and (3) dismissing the action against the

Individual Defendants would deprive Plaintiff of "all relief necessary to make [him]

whole," thus undermining the explicit intention and purpose of 31 U.S.C. § 3730(h), which

is to make a whistleblower whole.  (Dkt. 77 at 2-4).

As noted above, Defendants have failed to file a statement of undisputed facts in

support of their motion.  However, the issue raised by Defendants is purely a legal one and

in fact, many courts have decided this issue on a motion to dismiss brought pursuant to

Rule 12(b)(6).  *See, e.g.*, *Bieber v. Cayuga Cap. Mgmt., LLC*, No. 21-CV-5268(MKB),

2022 WL 22916786, at *12 (E.D.N.Y. Dec. 2, 2022); *Monsour v. N.Y. Off. for People with

Developmental Disabilities*, No. 13-CV-0336, 2014 WL 975604, at *11 (N.D.N.Y. Mar.

12, 2014); *Fisch v. New Heights Acad. Charter Sch.*, No. 12 Civ. 2033(DLC), 2012 WL

4049959, at *7 (S.D.N.Y. Sept. 13, 2012).  In other words, even taking the allegations in

Plaintiff's amended complaint as true, Plaintiff still could not assert a retaliation claim

against the Individual Defendants.  Accordingly, despite Defendants' failure to submit a statement of undisputed facts, the Court will exercise its discretion and resolve this issue.

31 U.S.C. § 3730 provides, in relevant part:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h).

"Although the Second Circuit has yet to opine on the issue, the majority of district courts in this Circuit have held there is no individual liability under the FCA."  *Bieber*, 2022 WL 22916786, at *6; *Fisch*, 2012 WL 4049959, at *4 (explaining that "[t]he Individual Defendants . . . cannot be liable under Section 3730(h) because they do not qualify as employers for purposes of the statute," and "[i]n light of the clear language of the statute . . . this Court joins the overwhelming balance of authority holding otherwise."); *see also United States ex rel. Taylor v. GMI USA Corp.*, 774 F. Supp. 3d 645, 675 (S.D.N.Y. 2025) ("[T]he law in this District is clear that no individual liability (without alter-ego status) exists for retaliation under the FCA." (collecting cases from the Southern, Eastern, and Northern Districts of New York)); *Monsour*, 2014 WL 975604, at *10 ("[A]n

individual may not be sued under § 3730(h) . . . either in an individual or official capacity; liability may only be imposed on employers.").[1]

As noted above, Plaintiff does not dispute that the majority view is that liability may be imposed only on employers. (*See* Dkt. 77 at 2). Rather, Plaintiff argues that amendments to the statute in 2009, where the term "employer," was eliminated, reflects Congressional intent to change the statute, so that employers are not the only persons or entities that can be guilty of retaliatory acts against whistleblowers after the 2009 amendments took effect. (*Id.* at 3; *see also U.S. ex rel. Moore v. Cmty. Health Servs., Inc.*, No. 3:09cv1127 (JBA), 2012 WL 1069474, at *9 (D. Conn. Mar. 29, 2012) (noting that courts interpreting the FCA have permitted a plaintiff to recover for retaliation by the employer, but "[t]he current Section 3730(h) following the 2009 amendments . . . conspicuously omits the word 'employer,'" and therefore the plaintiff's allegations

---

[1]    Although the issue is not raised by either Plaintiff or Defendants, some courts examining individual liability under § 3730(h) have considered whether an individual defendant may be held liable under the theory that the individual is the "alter ego" of the company. *See, e.g., Bieber*, 2022 WL 22916786, at *6 ("District courts in this circuit have suggested, without holding explicitly, that the alter ego theory is viable," and "[d]istrict courts outside of this Circuit have both expressly stated that an individual can be held liable under section 3730(h) as an alter ego of the employer corporation and that an individual cannot be liable"); *see also United States ex rel. Brumfield v. Narco Freedom, Inc.*, No. 12 Civ. 3674 (JGK), 2018 WL 5817379, at *3 (S.D.N.Y. Nov. 6, 2018) (considering whether a § 3730(h) claim can be brought against an individual as an alter ego of an employer corporation); *Taylor*, 774 F. Supp. 3d at 669 (considering alter-ego and veil-piercing, where the plaintiff raised those issues on summary judgment). Plaintiff does not allege in his amended complaint, or otherwise make any argument in opposition to Defendants' motion, that the individual defendants were the alter egos of DRNY. Accordingly, the Court need not decide whether the individual defendants may be held liable under the alter ego theory of liability. *See Bieber*, 2022 WL 22916786, at *6; *Brumfield*, 2018 WL 5817379, at *3.

stemming from conduct after May 2009, could give rise to a retaliation claim against the individual defendants)).

Plaintiff's argument concerning the implications of the 2009 amendment has been squarely rejected by several courts within the Circuit.[2]  In *Aryai v. Forfeiture Support Assocs.*, 25 F. Supp. 3d 376 (S.D.N.Y. 2012), the Court engaged in a thorough discussion explaining why the 2009 amendment to the FCA's anti-retaliation provision[3] did not widen the scope of the statute to hold individuals liable (*id*. at 385-87), concluding:

> The foregoing considerations taken together, *i.e.,* that 1) Congress's expressed purpose in amending section 3730(h) was to expand the class of potential *plaintiffs*, 2) Congress was silent on the issue of the class of potential *defendants*, that is, on the issue of individual liability, and failed to substitute "person" for "employer," and 3) Plaintiff's interpretation leads to an unavoidable contradiction within the statute, leads the Court to conclude

---

[2]    Two Courts of Appeal have also rejected Plaintiff's argument that the 2009 amendment expands liability to include individual defendants.  *See United States ex rel. Strubbe v. Crawford Cnty. Mem'l Hosp*., 915 F.3d 1158, 1167 (8th Cir. 2019) (rejecting relators' argument that 2009 amendment to the FCA expanded liability, noting that after the 2009 amendment, "numerous courts still hold that the FCA does not create individual liability because Congress deleted the word 'employer' so contractors and agents could bring FCA retaliation claims," and concluding that "[b]ecause Congress did not amend the FCA to impose individual liability, the FCA does not impose individual liability for retaliation claims"); *Howell v. Town of Ball*, 827 F.3d 515, 530 (5th Cir. 2018) ("Before the passage of the 2009 amendments, federal courts uniformly held that the FCA created a cause of action against only a plaintiff's employer.  Adopting Howell's argument means concluding that Congress overturned this precedent, not by the insertion of express language expanding liability, but only by mere implication.  We decline to accept such a forced argument regarding Congress's intent.").

[3]    Prior to the 2009 amendment, 31 U.S.C. § 3137(h) stated, in relevant part: "Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole."

> that Congress deleted the relevant language not to provide for individual liability but as a grammatical necessity of expanding the statute's protections to cover a "contractor" or "agent" in addition to an "employee."

*Id*. at 387.  Several other courts in the Circuit have adopted the same reasoning.  *See, e.g.*, *Diffley v. Bostwick*, No. 17-CV-1410, 2017 WL 6948358, at *2 (S.D.N.Y. Dec. 6, 2017) ("this Court joins 'the overwhelming majority of courts . . . [that] have held that the current version of § 3730(h) does not create a cause of action against supervisors sued in their individual capacities," and citing to cases which have engaged "in extensive analysis of the legislative history and context of the 2009 amendment before declining to adopt Plaintiff's precise argument"); *Monsour*, 2014 WL 975604, at *11 ("Plaintiff's reliance on a 2009 amendment to § 3730(h) that deleted the word 'employer' from the statute for the proposition that individual liability now exists is misplaced.  Courts in this Circuit have recognized that this amendment did not evidence Congress's intent to add individual liability for a violation of the retaliation provisions of the FCA.").

The Court agrees with the *Aryai* court's thorough reasoning—particularly, the point that the stated primary purpose of the 2009 amendment was to expand what formerly was a cause of action only for an "employee" into a cause of action for an "employee, contractor, or agent."  *Aryai*, 25 F. Supp. 3d at 386 ("The Report contains no similar statement of intent to expand the scope of liability to include individuals.  Where Congress *expressly* stated its intent to expand the definition of a whistleblower and added *specific* language to effectuate that intent, it strains common sense to read Congress's *silence* in the same sentence of the statute as effectuating an *unexpressed* intent to expand the class of defendants subject to liability under the statute."); *cf. Monsour*, 2014 WL 975604, at *11

- 12 -

(criticizing *Moore*'s "one sentence analysis," which has been rejected within and outside the Circuit).  Accordingly, the Court does not find Plaintiff's arguments with respect to the 2009 amendments to be persuasive.

Plaintiff further argues that, both before and after the 2009 amendments, the intent of the statute was "very clear," and was to provide "all relief necessary to make the [whistleblower] whole."  (Dkt. 77 at 3).  Plaintiff further notes that "it is fair to ask how such uniformity of opinion in the District Courts developed in the face of the obvious statutory silence on the very question being considered," and speculating that it is because district courts look at relators as "disgruntled employees," rather than "whistleblowers." (*Id*. at 4).  Plaintiff's argument is speculative, and he cites no case law supporting the position that the statute's language with respect to providing "all relief necessary" somehow expands the scope of defendants against whom a retaliation claim may be pursued under the statute.  In other words, simply because a statute provides that a whistleblower is entitled to "all relief necessary" to make him whole, does not create a claim where it otherwise does not exist in the statute.

For those reasons, the Court concludes that the Individual Defendants are not subject to liability for retaliation under § 3730(h).  Defendants' motion for summary judgment on behalf of the Individual Defendants (Dkt. 73) is granted, and the Clerk of Court is directed to dismiss Eric Lundquist and Muriel Lundquist as defendants.

## B.  Plaintiff's Motion – Summary Judgment on Retaliation Claim

Plaintiff moves for partial summary judgment on the issue of liability against Defendants, arguing that he has established through documentary and other undisputable

proof that Defendants retaliated against him by terminating his employment, in violation of 31 U.S.C. § 3730(h).  (Dkt. 74-7 at 4).  At the beginning of the memorandum of law, Plaintiff includes a section entitled "Factual Background," wherein he summarizes the allegations in the amended complaint (*see id*. at 1-2 (citing allegations at paragraphs 35 *et seq*. and paragraph 41)), and he cites exhibits attached to his motion, including audio from phone calls, emails, and a letter (*id*. at 2-3).

The Court has reviewed the exhibits submitted by Plaintiff in support of his argument that he is entitled to summary judgment on his retaliation claim.  Exhibit A is the audio of a phone call between Plaintiff and Mr. Lundquist, on January 7, 2020.  In the phone call, Plaintiff references that Mr. Lundquist told Plaintiff that Plaintiff needed to "sign this thing for the GSA, or that [he] needed to resign" from his job.  Plaintiff stated that he would not sign off or resign, and that Mr. Lundquist would have to fire him.

Exhibit B is the audio of a phone call between Plaintiff and Mr. Lundquist, on January 8, 2020.  In the phone call, Plaintiff again refused to sign off on the GSA certification—stating his opinion that doing so would be a felony—and in response Mr. Lundquist told Plaintiff to submit his resignation because he was not doing his job. Plaintiff again refused to resign, and Mr. Lundquist told Plaintiff that he failed to move projects along and that two of his key people quit because they could not work with him.

Exhibit C is an email dated February 10, 2020, from Tom Fink, DRNY's attorney, to Plaintiff, Mr. Lundquist, and DRNY's consultant, communicating that DRNY would "need to update [the] GSA contract from what was signed in 2011," which would "include pricing for services and your pay rate for employees which needs to be at least the federal

- 14 -

wage rates." (Dkt. 74-3). Mr. Fink further stated that "if you do represent that you are a GSA contractor and are using GSA rates you do have to pay your employees according to the rate schedule in the GSA contract proposal," and "[i]f on the extension with Jersey City you do not want to use the GSA rates and pay employees the GSA wage rates I believe you can but you need in writing to agree with Jersey City you are now not using the GSA rates," and have Jersey City agree to the new schedule. (*Id*.).

Exhibit D is the audio of a phone call between Plaintiff and Mr. Lundquist, on February 13, 2020. Plaintiff asked Mr. Lundquist if he had read Mr. Fink's email. Mr. Lundquist stated that both he and two consultants disagreed with Mr. Fink's analysis to the extent Mr. Fink understood the Jersey City contract to be a GSA contract. Plaintiff stated that given Mr. Fink's email, Plaintiff would not sign off on the bill for Jersey City and he would not get Mr. Lundquist the updated numbers. Mr. Lundquist told Plaintiff that if he would not do his job, he needed to submit a resignation letter, because someone needed to do the billing. Mr. Lundquist stated that he would "accept that as [Plaintiff's] resignation." Plaintiff stated that he was "not resigning," and that Mr. Lundquist would have to "put it in writing," and Mr. Lundquist responded, "you're not on the payroll anymore, how's that sound." Mr. Lundquist offered Plaintiff additional time to think about how he wanted to proceed, which Plaintiff accepted. Mr. Lundquist asked Plaintiff to call him back with his decision.

Exhibit E is an email from Plaintiff to Mr. Lundquist dated February 18, 2020, at 4:10 p.m., stating that "[d]ue to Fink's recent email, I will no longer be sending anything to [Jersey City] having to do with the pricing, edits staff are working on, or billing," that

- 15 -

Mr. Fink's email demonstrated that DRNY was not in compliance, and "[i]n that the outstanding billing requires contract obligations to extend the contract using your new GSA price schedule, then this is a corporate issue that you, as an owner, should address with Tom Fink and Jersey City." (Dkt. 74-4). Plaintiff concluded the email, "[p]lease respond back if you disagree or if you want me to do something or call you when I get down out of the air in 2.5 hours in Atlanta as they are making me turn off my cellphone." (*Id.*).

Exhibit F is the response email from Mr. Lundquist to Plaintiff, dated February 18, 2020, at 5:14 p.m., acknowledging Plaintiff's email, and noting that "[l]ast week you had mentioned to me that you would be gone Wednesday, Thursday and Friday so knowing this, I expected you to be in the office all day today, Tuesday, to get important Jersey City billing sent out." (Dkt. 74-5). Mr. Lundquist also noted that Plaintiff should have let someone know that he was not intending on getting the Jersey City billing out, Mr. Lundquist was unable to reach Plaintiff by email or telephone, and concluded: "The time is critical for this bill and you have chosen to be out of town and unavailable and not do it before you left, and then let us know at the end of the day that you weren't going to do it at all. That's unacceptable behavior for an executive in your position. From this point I will take over your responsibilities at DRNY." (*Id.*).

The next Exhibit is a termination letter from Mr. Fink to Plaintiff, dated February 19, 2020, communicating that "Mr. Lundquist asked me to inform you as his attorney that you are terminated immediately," and "[i]t is unfortunate based on your tenor with the Company that issues arose as set forth in the email exchanges that have occurred between yourself and Mr. Lundquist." (Dkt. 74-6).

In their response papers, Defendants dispute at least some of Plaintiff's recounting of events, including that Plaintiff undertook any investigation of FCA violations (*see* Dkt. 76 at 12 (arguing that Plaintiff "provides no objectively reasonable grounds for believing that he was involved in a[n] FCA investigation other than his own misguided and refuted beliefs of the same")), and that his employment was terminated solely because of his alleged investigation (*id*. at 13 (arguing that Plaintiff resigned, DRNY terminated him because he resigned, and also for other reasons, including that he "alienated the entire DRNY management team," and "abused the DRNY corporate credit card account," including to make improvements to his home)).[4]

In support of their argument, Defendants attach the declaration of Mr. Lundquist, wherein Mr. Lundquist offers the following: it was discovered in 2016 that Plaintiff had misdirected and used DRNY funds and employees to perform significant renovations on his personal residence, that Plaintiff admitted doing so and agreed to pay back the misappropriated funds, after which DRNY kept Plaintiff as an employee but with additional supervision (Dkt. 76-1 at ¶ 4); Plaintiff alienated most of the existing DRNY staff, and three individuals left the company because of Plaintiff (*id*. at ¶ 5); Plaintiff's premise of retaliation against DRNY is unfounded because DRNY was not required to pay GSA rates on the Jersey City project, which was not a federal project, and Plaintiff was not

---

[4]     Defendants also argue in response to Plaintiff's motion that Plaintiff is not entitled to summary judgment on liability for his claims against the Individual Defendants, since there is no individual liability under the anti-retaliation provision of the FCA.  (Dkt. 76 at 9-11).  As explained at Section II(A) of this Decision and Order, the Court has resolved that issue in Defendants' favor.

required to verify to the government that GSA's prevailing hourly wage and benefits requirements were being met (*id*. at ¶¶ 6-14); GSA audited DRNY yearly, each year it passed the audit, and there were no problems found with DRNY's reporting (*id*. at ¶ 11); and Plaintiff resigned from his position on February 18, 2020, which Mr. Lundquist verbally accepted, but Plaintiff then locked DRNY and its consultant, Edward Hitchner, out of the GSA system, and Mr. Lundquist was only formally terminated when he refused to transfer the GSA portal and access to DRNY's accounting systems (*id*. at ¶ 15). Mr. Lundquist states that Plaintiff was "utilizing a feigned GSA red herring to be insubordinate," which had nothing to do with payments made to the federal government under the GSA. (*Id*. at ¶ 17). In other words, Mr. Lundquist states that it was the culmination of Plaintiff's self-dealing, poor management, and refusal to do his job that led to his termination, and that DRNY was not engaging in false reporting.

In his reply papers, Plaintiff states that Defendants have "invented issues of fact" (Dkt. 79 at 1), but he does not make any meaningful argument about why the evidence offered by Defendants should not be considered by the Court. Missing from Plaintiff's reply is any response to Defendants' contention that Plaintiff resigned and was fired only after refusing to provide Defendants with access to DRNY's accounting systems.

As noted above, Plaintiff has neglected to include a statement of undisputed facts, as required by Rule 56(a)(1) of the Court's Local Rules of Civil Procedure. The purpose of a statement of undisputed facts "is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 74 (2d

Cir. 2001). Plaintiff's failure to submit a statement of facts with respect to the retaliation claim—which turns on the facts in the record, rather than simply a legal question—has unnecessarily burdened the Court with hunting through the exhibits submitted by the parties, without any guidance as to which facts have been deemed disputed or undisputed, or which facts are relevant to Plaintiff's claim. Having reviewed the exhibits submitted by the parties, there appear to be at least some gaps in the record, which could have been remedied by the parties' filing statements of undisputed facts. The Court denies the motion on this basis alone. *See* L. R. Civ. P. 56(a)(1) ("Failure to submit a statement in compliance with this Rule may constitute grounds for denial of the motion."); *In re O'Hara*, No. 02-10325, 2004 WL 3522694, at \*2 (D. Vt. July 8, 2004) ("Since both parties have failed to submit a statement of undisputed facts, denial of both motions is warranted on procedural grounds.").

That said, the Court also concludes that even setting aside Plaintiff's failure to submit a statement of undisputed facts, Plaintiff is not entitled to summary judgment because, based on the materials submitted by the parties, there appear to be disputed issues of fact. "The False Claims Act makes unlawful retaliatory action towards an employee for contesting – i.e., 'blowing the whistle on' – their employer's conduct violating the Act." *Taylor*, 774 F. Supp. 3d at 668. To establish such a claim, a plaintiff must show "(1) he engaged in activity protected under the statute, (2) the employer was aware of such activity, and (3) the employer took adverse action against him because he engaged in the protected activity." *United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 95 (2d Cir. 2017). A party need not succeed on the underlying FCA

claim to successfully show retaliation, but "he must demonstrate that he had been investigating matters that were calculated, or reasonably could have led, to a viable FCA claim." *United States v. N. Adult Daily Health Care Ctr.*, 205 F. Supp. 3d 276, 298 (E.D.N.Y. 2016) (quotations, citation, and alteration omitted).

Plaintiff asks that the Court issue a pre-trial ruling that he is entitled to a favorable finding on liability for his retaliation claim. In addition to failing to submit a statement of undisputed facts, Plaintiff has failed to submit a sworn statement detailing his version of events as they pertain to the alleged retaliation and termination.[5] While the Court has reviewed his exhibits, Plaintiff's failure to submit a sworn statement has deprived the Court of review of a more fulsome factual record supporting his claims. And as discussed above, in response to Plaintiff's motion Defendants have offered evidence disputing that Plaintiff was engaged in protected activity by complaining of FCA violations, because he was not investigating matters that were calculated, or reasonably could have led, to a viable FCA claim. (*See, e.g.*, Dkt. 76-1 at ¶¶ 10-11 (the Jersey City project was not a federal contract, was not subject to GSA pricing or federal labor rates and benefits, and GSA audited DRNY yearly, and each year it passed such audits)). Defendants have also disputed that Plaintiff's termination was in retaliation for engaging in said activities. (*Id*. at ¶¶ 4, 15 (Plaintiff was fired because of his insubordination, poor management, and self-dealing)). These are factual issues that cannot be resolved on the papers. Accordingly, Plaintiff's motion for summary judgment on the issue of liability is denied.

---

[5]     Plaintiff does submit an affidavit at Docket 74-1, but that document merely lists and authenticates the exhibits attached to his motion

## CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment (Dkt. 73) is granted, and Plaintiff's motion for partial summary judgment (Dkt. 74) is denied. The Clerk of Court is directed to terminate defendants Eric Lundquist and Muriel Lundquist as defendants to this action.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:    March 23, 2026
          Rochester, New York